## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE:  JOHN WOODRUFF, | § | CASE NUMBER: 17-70070-JTL |
| Debtor. | § | |
| | § | CHAPTER 7 |

---

## DEBTOR'S MOTION FOR DAMAGES AND SANCTIONS UPON WILLFUL VIOLATION OF THE AUTOMATIC STAY BY CREDITOR SOUTHERN SELF STORAGE

---

COMES NOW DEBTOR JOHN WOODRUFF in motion for monetary award against Creditor Southern Self Storage for violation of the automatic stay.[1] Debtor alleges Creditor violated THE COURT'S automatic stay through willful and wanton continuation of pre-petition lien action against Debtor's personal property despite valid notice of bankruptcy commencement. Debtor further invokes THE COURT'S pendent/supplementary/ancillary jurisdiction to resolve concurrent state tort(s) arising from the common nucleus of operative fact. Wherefore, Debtor avers as follows:

## FACTUAL ALLEGATIONS

1. Debtor had pre-petition personal property stored at a facility operated by Creditor Southern Self Storage.

---

[1] This matter is presented by motion as a contested matter pursuant to *Green Point Credit, LLC v. McLean (In re Mclean)*, 794 F.3d 1313  (11th Cir. 2015).

2.  Creditor Southern Self Storage took pre-petition lien enforcement actions that included deactivating Debtor's access code, double-locking Debtor's storage unit, cutting Debtor's padlock, and publishing notice of public auction.

3.  Prior to auction, Debtor personally filed a voluntary chapter 7 bankruptcy petition on Monday, January 23, 2017 at 9:20 am EST.

4.  Debtor thereupon proceeded directly from Columbus to Valdosta and personally noticed Creditor Southern Self Storage of the bankruptcy filing.

5.  Such notice occurred at approximately 12:55 pm EST and included presentation of written suggestion of bankruptcy.

6.  Debtor also permitted site managers Gregory Frier and Brenda Patera to inspect and copy Debtor's petition (Doc 1).

7.  Patera and Frier requested time to consult with Creditor's corporate office to determine how to proceed.

8.  Patera subsequently telephoned Debtor at 3:44 pm. Patera stated that her instructions were to terminate the pre-petition rental agreement and to execute a new post-petition lease. Patera further stated, however, that Creditor's computer system would not allow these events to occur on the same date and requested Debtor return the following day to execute the new rental agreement.

9.  Debtor returned the following day and executed a new rental agreement with Frier. Frier then collected prorated post-petition fees.

10. Frier then stated that he had been instructed to deny Debtor access to the personal property stored at Creditor's facility due to the bankruptcy filing.

11. Upon Debtor's objections, Frier promised to seek clarification by end of business.

12. Debtor next spoke with Frier at 2:17 pm at which time Frier stated that he had received confirmation from Tresha Powe to deny access to Debtor.

13. Debtor then telephoned Tresha Powe at 2:26 pm and left a voicemail. Having received no response, Debtor called again at 2:38 pm. Debtor spoke with an operator and was transferred directly to Powe.

14. Powe stated that Creditor would not release the personal property unless and until so instructed by the bankruptcy court. When Debtor objected, Powe then requested additional time to obtain advice from legal counsel.

15. Debtor replied that Creditor had already received twenty-four hours to confer with counsel and that further time was unreasonable.

16. Debtor advised that his itinerary did not permit him to wait indefinitely and informed Powe that Creditor had until the close of business to take curative action or Debtor would seek court sanctions.

17. Debtor telephoned Frier at 4:28 pm EST and was told that Creditor still refused to grant access to Debtor.

18. Debtor then departed Valdosta without having been given access to his property.

19. The following day, Patera telephoned Debtor at 9:59 am to advise that Creditor had removed Creditor's lock from Debtor's storage unit and that Debtor's access code would be reactivated by end of day.

20. Debtor responded that it was inappropriate and negligent for Creditor to leave Debtor's unit unsecured. Debtor further responded that Creditor's refusal to restore Debtor's access to the stored property constituted an unlawful bailment. For Creditor's and Debtor's mutual interest, Debtor insisted that Creditor re-lock the unit until Debtor could present himself during business hours to affix his own lock.

## LEGAL ALLEGATIONS

21. Creditor's pre-petition denial of access was an action taken to assert Creditor's lien interest in Debtor's personal property. It is so defined and set forth in the rental agreement and in state law (O.C.G.A. § 10-4-213).

22. The automatic stay of 11 U.S.C. § 362(a)(3)-(5) specifically prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," "any act to create, perfect, or enforce any lien against property of the estate," and "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title."

23. Federal law entitles Debtor to recover actual damages and, "in appropriate circumstances," punitive damages against Creditor for violation of the automatic stay. (11 U.S.C. § 362(k))

## ACTUAL DAMAGES (FEDERAL)

24. As a direct result of Creditor's unlawful actions, Debtor will have to make a special return trip to retrieve certain property to which he was denied access.

25. Such return trip will toll 608 miles at a cost of $0.535/mi equaling $325.28 in actual damages.

26. Such return trip will further harm Debtor by depriving him of 10 hours of personal time that, imputing minimum wage, equals $72.50 in actual damages.

27. Such return trip will subject Debtor to protracted boredom, excessive annoyance, physical discomfort, and absence from planned activities for which Debtor asks THE COURT to award special damages in the amount of $250.00.

## ACTUAL DAMAGES (STATE)

28. Creditor's actions unlawfully interfered with Debtor's possession and enjoyment of his personalty (O.C.G.A. § 51-10-1) and Creditor's actions breached its private duty owed to Debtor (O.C.G.A § 51-1-8) by and through the post-petition contract between the parties.

29. Furthermore, Creditor's concealment of its intention to interfere with Debtor's right to his personalty constituted deceit and/or fraudulent misrepresentation of material fact (O.C.G.A § 51-6-2).

30. Debtor therefore asks THE COURT to award actual damages under state law in the amount of $250.00.[2]

## PUNITIVE DAMAGES (FEDERAL)

31. Debtor was initially sympathetic to Patera's and Frier's need to consult with Creditor's corporate offices. Debtor, at least initially, even tolerated Creditor's assertion that its computer systems would not allow termination and execution of rental agreements on the same date. However, Debtor's patience and tolerance ended when the post-petition contract was signed.

32. To properly characterize Creditor's conduct for THE COURT, Debtor undertook cursory investigation of public records and avers as follows:

  a. Creditor currently owns and operates eight storage facilities in Florida and Georgia.

  b. Creditor's principals, Robert McIntosh and Peter Cowie, have been business partners since at least 1984.

---

[2]   As noted previously, Creditor's actions established an adverse/nonconsensual bailment of Debtor's personalty (O.C.G.A. § 44-12-43) and/or conversion (O.C.G.A. § 16-8-4) which Debtor reserves for further action should any loss or physical damage to his personalty be found to have occurred.

c. McIntosh and Cowie have operated storage facilities since at least 1993.

d. Creditor, McIntosh, and Cowie were (and perhaps still are) members of the national Self Storage Association.

e. McIntosh and Cowie actively participated in industry trade fairs and events.

f. In 2013, McIntosh and Cowie sold 21 Florida facilities and 4 Canadian facilities to Public Storage, Inc. for $240 million.

33. Debtor represents that Creditor and/or its principals had ample business experience to fully understand the requirements of the automatic stay and acted in deliberate, callous, or reckless disregard for the law.

34. Debtor therefore asks THE COURT to assess <u>coercive</u> punitive damages in the amount of $20,000.00 to be paid into the registry of THE COURT and disbursed as the Trustee deems appropriate.

**WHEREFORE, THE FOREGOING AVERMENTS CONSIDERED**, Debtor prays THE COURT issue a show cause order commanding Creditor Southern Self Storage to respond within 15 days.

RESPECTFULLY SUBMITTED,
<u>s/ John Michael Woodruff</u>

JOHN M. WOODRUFF, PH.D.
POST OFFICE BOX 4584
VALDOSTA, GEORGIA 31604
JOHN@JOHNWOODRUFF.COM
(404) 477-4652

## CERTIFICATE OF SERVICE

Debtor certifies that he has this 30th day of January of 2017 served a copy of this filing upon the party or parties stated below. Pursuant to FRBP 9036, LBR 5005-4, FRCP 5(b), GAMD L.R. 5(b), FRAP 25, and 11th Cir. R. 25-3, a party or parties participating in electronic filing will be served by and through THE COURT'S electronic case management system. Those not served by THE COURT'S electronic systems have been served on this date by direct electronic mail, by telephonic facsimile, by personal delivery to a responsible party at the location stated below, or by conveying the same through, and in the manner required by, the United States Mail addressed as stated below.

Walter W. Kelley
Post Office Box 70879
Albany, Georgia 31708

Southern Self Storage
3200 Inner Perimeter Rd.
Valdosta, Georgia 31602
(229) 244-4900

Southern Self Storage
3300 PGA Blvd., Suite 350
Palm Beach Gardens, Florida 33410
(561) 775-7393

SO AFFIRMED,
s/ John Michael Woodruff