## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| IN RE:  JOHN M. C. WOODRUFF, | § | CASE NUMBER: **17-70070-JTL** |
| Debtor. | § | |
| | § | CHAPTER 7 |

---

### DEBTOR'S MEMORANDUM OF FACT, LAW, AND PUBLIC POLICY

---

After diligent investigation of public records and contemplation of facts specific to the instant proceeding, this memorandum of fact and law will show that Trustee Kelley routinely requests and receives authorization to employ a fictitious law firm; that the fictitious firm is a pretense for an actual firm where Trustee Kelley serves as chief executive officer, chief financial officer, general officer, attorney-in-fact, and majority shareholder; that Trustee Kelley uses the fictitious firm to gain compensation surpassing the limits of 11 U.S.C. § 326; that Trustee Kelley authorizes and expects his employed professionals to engage in unnecessary and abusive litigation; that Trustee Kelley opposes Debtor's Chapter 11 conversion out of personal economic interest rather than estate interest or creditor interest; that Trustee Kelley defamed and libeled Debtor to discredit him before the bankruptcy court; that Debtor tendered formal, written complaint to the Assistant United States Trustee; and that Trustee Kelley communicated false information to the United States Marshals in an attempt to intimidate and further discredit Debtor.

Debtor's findings are the culmination of Debtor's private investigation of public records which, to the extent possible, will be exhibited (EXHIBITS A-D). For the reasons here following, Debtor avers that THE COURT should disapprove its authorization to employ the fictitious firm; that THE COURT should declare Trustee Kelley to be conflicted and/or not disinterested; and that Trustee Kelley should be removed from Debtor's case and possibly all cases pursuant to 11 U.S.C. § 324.

## STATEMENT OF FACTS

Debtor filed a voluntary Chapter 7 petition on 23 January 2017 in the Bankruptcy Court of the Middle District of Georgia (Doc 1). The 341(a) meeting of creditors was held on 14 March 2017. Debtor's petition was initially reported as a no-asset proceeding (Doc 47). On 22 May 2017 Debtor was contacted by a Birmingham, Alabama law firm informing Debtor that Debtor was a beneficiary to his grandfather's estate. This same day Debtor contacted Trustee Kelley's office to inform him of the same. On 28 May 2017 Debtor tendered a voluntary, unsolicited 28 U.S.C. §1746 declaration amending Debtor's 341 testimony and attesting to the facts and circumstances of Debtor's latent knowledge of his beneficiary standing to his grandfather's estate (EXHIBIT E).[1] Trustee Kelley subsequently withdrew his report of no distribution and entered a report of possible assets (Doc 52, Doc 53).

---

[1] Debtor did not initially file his declaration in the case as it was not directly relevant to any question before THE COURT. Debtor did later exhibit his declaration (Doc 57-1) as evidence of his forthcomingness. Debtor herewith renews the publication of the original declaration.

On 6 June 2017, Trustee Walter Kelley applied to THE COURT for authorization to employ the firm of "Kelley, Lovett, Blakey & Sanders, P.C." (Doc 54). THE COURT subsequently granted the application (Doc 60). Following this appointment, Thomas Lovett has appeared exclusively on behalf of Trustee Kelley and has filed numerous frivolous and abusive actions. But even before THE COURT had granted the trustee's application for employment of professionals, Mr. Lovett began contacting Debtor and counsel for the decedent's personal representative demanding surrender of the bequeathed property. Both Debtor and counsel for the decedent's personal representative proposed alternate least-costly solutions, all of which Mr. Lovett refused.

Mr. Lovett then commenced an adversary proceeding (Doc 66, AP Doc 1) against Debtor and the decedent's personal representative. Among other reliefs, Mr. Lovett sought orders that the bankruptcy court relegate unto itself the exclusive authority to construe the decedent's last will and testament. Debtor moved for a temporary restraining order (Doc 67) against Messrs. Lovett and Kelley. Debtor further briefed THE COURT (Doc 78) on facts and laws pertaining to the probate exception established in *Markham v. Allen*, 326 U.S. 490 (1946) and *Marshall v. Marshall*, 547 U.S. 293 (2006). After lengthy hearing, THE COURT denied Debtor's motion for the temporary restraining order (Doc 82). However, in light of Debtor's brief and the denial of the temporary restraining order, Mr. Lovett

amended his complaint to try to sidestep the probate exception (AP Doc 9). Mr. Lovett also filed various motions within the adversary proceeding (AP Doc 12, AP Doc 13, AP Doc 15) to which Debtor was obliged to respond in writing and to argue orally.

As a consequence of Mr. Lovett's wanton litigation, counsel for the decedent's personal representative was compelled to file a petition for instructions with the Probate Court of Jefferson County, Alabama.[2] As further consequence, Debtor and counsel for the decedent's personal representative were compelled to file a response and to argue the same before the bankruptcy court. Among other arguments concerning the applicability of the probate exception, Debtor informed THE COURT that Alabama law differed from Georgia law as to the inclusion or exclusion of trusts in bankruptcy proceedings. THE COURT subsequently dismissed Mr. Lovett's adversary proceeding pursuant to the *Markham* and *Marshall* probate exception (AP Doc 30).

Thomas Lovett subsequently moved for reconsideration of the dismissal (AP Doc 34) but cited neither statute nor case law nor latent ruling which would invalidate or otherwise color THE COURT's ruling. Once again, Debtor and counsel for the decedent's personal representative were compelled to file a response and to

---

[2] As presented to the bankruptcy court many times over, the Probate Court of Jefferson County, Alabama is one of two Alabama probate courts with statutory equity jurisdiction.

argue the same before the bankruptcy court. Though THE COURT only slightly amended its prior orders, THE COURT again held that the probate exception applied and THE COURT sustained its dismissal of the adversary proceeding (AP Doc 43). In the end, the only orders obtained by Mr. Lovett could (and properly should) have been obtained by ordinary motion within the core bankruptcy proceeding.

Acting with a level of magnanimity that escapes Debtor's comprehension, counsel for the decedent's personal representative supplied Mr. Lovett with numerous documents relating to the decedent's estate. These documents included a transaction register from the transfer agent attesting to the number of common shares owed by the decedent prior to and following his death. This, however, was not satisfactory for Mr. Lovett who then applied for a subpoena to be served upon the corporation (but not the transfer agent). Once again Debtor was obliged to file a response and to argue the matter (as Debtor and as shareholder) before THE COURT.

Mr. Lovett subsequently applied for authorization to employ a professional auctioneer (Doc 98), notwithstanding the fact that the Trustee had received no property that could be auctioned, and notwithstanding the fact that the Trustee would not receive such property for another ninety days (at minimum, if at all!).

On 29 November 2017, Debtor moved for conversion of his bankruptcy from Chapter 7 to Chapter 11 (Doc 106). Debtor also prayed for expedited ruling and waiver of hearing as conversion was sought as of statutory right. THE COURT

reserved ruling on Debtor's motion to convert, denied the latter requests and set the matter for hearing on 11 December 2017 (Doc 108).

On Thursday, 2 November 2017, Trustee Kelley drafted and emailed a motion which he intended to file in the Probate Court of Jefferson County, Alabama the following Monday. Trustee Kelley's motion sought to preclude Debtor from participating in the probate proceedings. Debtor spent the night drafting an emergent motion (Doc 110) complaining of Trustee Kelley's timing which deprived Debtor of time to respond and praying various remedies restraining Trustee Kelley from his declared course of conduct. THE COURT convened a hearing the afternoon of Friday, 3 November 2017. Mr. Lovett again appeared in opposition. THE COURT denied Debtor's motion with the caveat that Trustee Kelley not use the argument of motion to prevent Debtor from opposing the motion itself.

The petition for instructions filed by the decedent's personal representative was heard in the Probate Court of Jefferson County, Alabama on 6 November 2017. Trustee Kelley personally appeared and filed his motion in open court. Debtor challenged Trustee Kelley's appearance as a foreign attorney. Trustee Kelley initially misrepresented his trustee authority, and only after much hem-hawing and questioning by the probate court, Trustee Kelley admitted that panel trustees were private persons and not employees of the federal government. The probate court therefore denied Mr. Kelley's appearance as a foreign attorney but

permitted him to appear as a non-attorney private trustee. The probate court further

denied Mr. Kelley's motion to exclude Debtor from the probate proceedings on the

grounds that Mr. Kelley had drafted the motion as a foreign attorney and on the

grounds that its filing in open court was insufficient to give Debtor opportunity to

file a response.[3]

The only construable reason for Trustee Kelley's attendance was to interfere

with the probate court's determination as to whether or not the testator's bequest

constituted a trust,[4] but in fact, neither Debtor nor any other party raised such

argument. The probate court proceedings were reported by the court's stenographer

whose record will show that Trustee Kelley rendered no meaningful services

related to his administration of the Chapter 7 estate. Thus, Trustee Kelley's

appearance was entirely unnecessary, harmful to the bankruptcy estate, wasteful of

the probate court's time, and unduly costly to the decedent's estate.

Following the probate proceedings, Debtor amended and served (Doc 115)

his conversion motion in accordance with THE COURT's prior orders (Doc 108,

Doc 109). An hour later, Mr. Lovett filed a motion for Rule 2004 production of

---

[3] It is worth observing that since Trustee Kelley appeared only as a non-attorney trustee, he cannot claim any compensation from the estate for "professional" services for drafting the motion, attending the probate hearing, or commuting to and from the probation hearing. Trustee Kelley would thus be limited to the actual expenses of mileage, parking, and meals.

[4] Which begs an examination as to whether Trustee Kelley, as a representative of the bankruptcy court, acted with disregard or indifference to the *Markham* and *Marshall* probate exception by arguing a position material to the bankruptcy estate before the probate court.

documents (Doc 116). Pursuant to THE COURT's prior orders (Doc 69, Doc 74),
Debtor subsequently objected and moved for protective order on 21 November
2017 (Doc 119).

On 28 November 2017, Mr. Lovett filed an objection (Doc 120) to Debtor's
conversion. Mr. Lovett's objection contained scandalous and untrue accusations.
Debtor emailed Mr. Lovett instructions that he immediately remediate his libelous
filing. But not only did Mr. Lovett fail or refuse to act, he filed another seemingly
identical objection to conversion (Doc 124) at which time Mr. Lovett also moved
for a continuance (Doc 122). As Mr. Lovett's filings contained scandalous and
untrue accusations, Debtor move for seal (Doc 125) pursuant to FRBP 9018.
Debtor also moved to strike the same (Doc 126) and objected to continuance (Doc
127). Meanwhile, Debtor made formal, written complaint to the Assistant United
States Trustee in Macon concerning Trustee Kelley's employment of professionals
and wanton disregard of expenses (EXHIBIT F).

THE COURT heard arguments on 6 December 2017 at which time THE COURT
granted (Doc 128) Debtor's written motion to seal, granted (Doc 129) Debtor's
oral motion to restrict the hearing audio, denied (Doc 131) Mr. Lovett's demand
for production as not within the scope of Rule 2004, and granted (Doc 130) Mr.
Lovett's continuance to 29 December 2017.

On 7 December 2017, Debtor was interviewed by two United States
Marshals concerning Mr. Lovett's hearsay allegations in Doc 120 and Doc 124.
Specifically, Mr. Lovett alleged that Debtor, while engaged in conversation with
other persons, uttered a statement expressing vague sentiment that Trustee Kelley
drop dead (Doc 124, ¶5).[5] Mr. Lovett further claimed that Debtor transmitted a
series of intimidating emails (Doc 124, ¶6). Later that evening, Debtor moved THE
COURT to disapprove (Doc 132) Trustee's employment of legal professionals (Doc
54, Doc 60) on the grounds that the entity so employed is non-existent and
fictitious.[6] Debtor now amends that motion (Doc 132) to elaborate the factual
issues and to include removal of Trustee Kelley for misconduct and for conflict.

### TRUSTEE'S DUTY TO MINIMIZE COST

In *Otte v. United States*, 419 U.S. 43 (1974), the Supreme Court
unanimously observed that "[t]here is, of course, an overriding concern in the
[Bankruptcy] Act with keeping fees and administrative expenses at a minimum so
as to preserve as much of the estate as possible for the creditors" (*id*, at 53). One

---

[5] Mr. Lovett also alleged that Debtor "misrepresented orders" issued by the bankruptcy court
such that Trustee Kelley had to introduce the orders himself to correct the fraud (Doc 124, ¶5).
The court stenographer's record will prove this untrue, but without delving into such minutia,
Mr. Lovett's contention is belied by the fact that Douglas McWhorter, counsel for the
decedent's personal representative, already submitted the bankruptcy court's orders. Logically,
if the probate court already had the bankruptcy court's orders, how could Debtor have misled
the probate court and why would Trustee Kelley have needed to proffer orders which were
already in the probate court's record!? (EXHIBIT G)

[6] Filed in skeletal form so as to put Respondents on notice as to the substantive issues and to
enable consolidation of its hearing with the already calendared conversion motion.

method that trustees had historically used to control costs was employing themselves as professionals. That practice, however, was not without potential for abuse as noted by the 95th Congress: "[t]he purpose of permitting the trustee to serve as his own counsel is to <u>reduce</u> costs" (H.R. REP. NO. 595, 95th Cong., 2nd Sess. 95-96 (1972), at 329 n.2-n.3; emphasis added). More generally, the U.S. Department of Justice articulates the expected duties of a chapter 7 trustee thusly:

> The trustee is a fiduciary charged with protecting the interests of all estate beneficiaries – namely, all classes of creditors, including those holding secured, administrative, priority, and non-priority unsecured claims, as well as the debtor's interest in exemptions and in any possible surplus property. The duties enumerated under section 704 are specific, but not exhaustive. (U.S. DOJ Exec. Office for U.S. Trs., *Handbook for Chapter 7 Trustees* at 4–2 (2012)

The online handbook even adds this sentence: "The trustee should administer the estate so as to maximize the distribution to the beneficiaries." [7]

Trustee Kelley has a long practice of employing his *own* law firm as professionals, much to the detriment of creditors. As a starter, Trustee Kelley not only forsakes the benefits of free-market competition, but he also employs his firm under a fictitious name to hide the extent of his majority ownership and control. Trustee Kelley appears to condone wanton inflation of professional expenses which, as a consequence of his controlling interest in his firm, produces compensation for Trustee Kelley in excess of 11 U.S.C. § 326. Trustee Kelley

---

[7] See https://www.justice.gov/ust/handbook-chapter-7-trustees#_1_135

might be afforded the benefit of doubt as to his personal enrichment *if* there were

evidence that he imposed the restraint and cost control required of him by

Congress and the Supreme Court, but in the absence of such oversight Trustee

Kelley's personal enrichment cannot be believed to be mere serendipity.

As a preliminary showing, Debtor would refer THE COURT to the recent

matter of *In re William Bailey* (GAMB 5:16-bk-52548). In less than twelve

months, Trustee Kelley allowed **$58,000** in professional expenses to accumulate on

an estate with a scheduled worth of just over $200,000. This unfathomable expense

stands in sharp contrast to the trustee's expected commission of roughly $10,000.

Debtor would also point to the matter of *In re Ricky Wayne Bracewell* (GAMB

6:02-bk-60546) which will be discussed at length later on.

### HIDING IN PLAIN SIGHT - A FICTITIOUS FIRM

As stated in Debtor's initial motion (Doc 132), Trustee Kelley applied for

authorization to employ the firm of "Kelley, Lovett, Blakey & Sanders, P.C." as

professionals (Doc 54). Gravely concerned by the wanton expense, the conduct of

the proceedings, and the lack of trustee oversight, Debtor commenced a private

investigation into Kelley, Lovett, Blakey & Sanders, P.C. To this end, Debtor

performed a diligent search of public records and was unable to find any evidence

that the supposed firm is an actual entity within the State of Georgia.

The Office of the Secretary of State Brian Kemp has no past or present corporate registrations for "Kelley, Lovett, Blakey & Sanders, P.C." and an algorithmic boolean internet search finds no notices in the legal organs of Dougherty, Bibb, or Lowndes counties publishing such alias. Likewise no docket entry of an alias registration can be found in the public record portal of the Superior Court of Dougherty County. Debtor also contacted the Albany-Dougherty County business license office which advised that county ordinance requires local businesses to register all fictitious names with the Georgia Secretary of State.[8]

A basic internet search for "Kelley, Lovett, Blakey & Sanders, P.C." leads to a website using the domain of *bankruptcyga.com*. This domain, in turn, is registered by Kelley & Lovett, P.C. (EXHIBIT A) which *is* a corporate entity registered with the Secretary of State (EXHIBIT B). In fact, this firm has been in operation since 1984 of which Walter Kelley was a founding partner. The articles of incorporation were amended in 1985, 1987, and 1991 with this final amendment resulting in the name of Kelley & Lovett, P.C. (EXHIBIT B).

The annual corporate registrations filed with the Georgia Secretary of State show that Walter Kelley is the sole officer of Kelley & Lovett, P.C. and serves as chief executive officer, chief financial officer, general officer, and attorney-in-fact

---

[8] Thus state law providing for fictitious business names to be registered with the superior court and published in its legal organ is a nullity.

(EXHIBIT A). With the exception of Thomas Lovett who serves as secretary, none of

the other attorneys which Trustee Kelley lists on his application for employment of

professionals (Doc 54) are agents of Kelley & Lovett, P.C. Under the articles of

incorporation (EXHIBIT B), there are 500 shares existing in Kelley & Lovett, P.C.,

but it is not known how many shares are owned by Walter Kelley and how many

shares are owned by Thomas Lovett.

A quick PACER search of pleadings made by the attorneys which Trustee

Kelley listed on his application (Doc 54) shows that each uses a *kelleylovett.com*

email address. This unexpected discovery is confirmed by the attorney profiles

maintained by the Georgia bar association (EXHIBIT C). As with *bankruptcyga.com*,

*kelleylovett.com* is registered (EXHIBIT A) by Kelley & Lovett, P.C.[9]

These preliminary facts all suggest that Trustee Kelley is not merely a loose

associate of the "professionals" which he employs in his official capacity, but

rather that Trustee Kelley is already their private employer. Troubling questions

arise from this relationship. For example, if Trustee Kelley is the private employer

of the "professionals" which he employs in his official capacity, does Trustee

Kelley utilize their appointments in substitution of salary? Also, what assurance

does the public have that these private employees are not promised these public

---

[9] Domain registrant data is public record under ICANN rules and can be queried through any
WHOIS interface. These domains were first registered on 2/9/2000 (kelleylovett.com) and
4/28/2006 (bankruptcyga.com). Although the two domains resolve to different IP addresses,
both IP addresses traceroute to the same Scottsdale, AZ data center.

appointments as part of their stated or understood compensation? If Trustee Kelley

in fact uses these appointments as part of his compensation packages, then Trustee

Kelley would be using his quasi-public office for private gain.

Despite Georgia Rule of Professional Conduct 3.3's requirement of candor

before all tribunals, Debtor has been unable to uncover evidence that Trustee

Kelley has disclosed the extent of his interest in the firm which he makes

application to employ. Debtor would suggest that there is a chasmic difference

between asking a court to authorize employment of "Kelley, Lovett, Blakey &

Sanders, P.C." and asking a court to authorize employment of "Kelley & Lovett,

P.C." Debtor would further suggest that a bankruptcy court would look more

favorably upon the first (which suggests that Trustee Kelley is merely affiliated),

and less favorably upon the second (which suggests that Trustee Kelley is a major

stakeholder). Indeed, how would a court view Trustee Kelley's application to

employ "Kelley & Lovett, P.C." if it knew that Trustee Kelley is the chief

executive officer, chief financial officer, general officer, and attorney-in-fact of the

firm (EXHIBIT B) which he seeks to employ?

Laying aside for a moment the fictitiousness of the firm, Debtor contends

that the fact of Trustee Kelley's misleading applications to employ a fictitious firm

is sufficient basis to question the propriety of employing those professionals. But

beyond ethical qualms and uncertainties lie fundamental jurisdictional questions.

For example, if a court unknowingly authorizes employment of a non-existent firm, what authority does any supposed member of the non-existent firm have to appear in the case? And what about compensation allocated to the non-existent firm? If such firm does not actually exist, is any compensation sought or received in the name of the non-existent firm thereby rendered fraudulent?[10]

### TRUSTEE COMPENSATION IN EXCESS OF STATUTE

Debtor avers that employing an affiliated professional is very different in kind than employing a trustee's own firm—especially when such trustee is the majority shareholder of that firm. As chief executive officer, chief financial officer, general officer, and attorney-in-fact of his firm, there is no bright line separating Trustee Kelley from the services rendered in the firm's name. Once received by the firm, the compensation intermingles with other revenue and cannot be readily differentiated. Likewise, there is nothing preventing CEO-CFO Kelley from treating the firm's "professional" compensation as a slush fund.[11]

But as noted, since Trustee Kelley is the majority stakeholder in Kelley & Lovett, P.C., it would be incumbent upon a court to ensure that Trustee Kelley's

---

[10] And if fraudulent, since the applications for employment and compensation were filed via internet, does this not constitute wire fraud? One need only prove that the path of the internet connection at some point routed through an out-of-state switch, hub, nexus, or data center. See, *inter alia*, *U.S. v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995); *U.S. v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990); *U.S. v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994).

[11] In an ideal world, an affiliated professional would render his or her services under a distinct FEIN/ITIN to separate that affiliated person's duties performed as agent for the trustee from that person's duties performed as a member of her or his law firm.

compensation not exceed the statutory limitations of 11 U.S.C. § 326. However, if

a court is deprived of knowledge of the relationship between trustee and

professional, that court might not cast the critical eye upon the application that

would otherwise be required. Conversely, a court that is cognizant of the

compromising relationship between trustee and professional might be believed to

place conditions on such employment, or to deny employment altogether to avoid

running afoul of 11 U.S.C. § 326. Once again, the 95th Congress remarked:

> Subsection (b) limits a trustee that has been authorized to serve as his own counsel to <u>one</u> fee for each service. The purpose of permitting the trustee to serve as his own counsel is to reduce costs. <u>It is not included to provide the trustee with a bonus by permitting him to receive two fees for the same service or to avoid the maxima fixed in section 326</u>. (H.R. REP. NO. 595, 95th Cong., 2nd Sess. 95-96 (1972), at 329 ff. 2-3; emphasis added)

When an a trustee employs himself or herself as a professional, great care

must be taken to ensure that the trustee clearly delineate his or her trustee duties

from her or his professional services to ensure that the trustee is not compensated

at the professional rate for trustee duties (H.R. REP. NO. 595, 95th Cong., 2nd

Sess. 95-96 (1972), at 329 ff. 2-3; S. REP. NO. 989, 95th Cong., 2nd Sess. 39

(1978); *In re First Colonial Corp. of America*, 544 F.2d 1291 (**5th Cir 1977**),[12]

cert. denied, 431 U.S. 909). If, however, Trustee Kelley employs his own law firm,

---

[12] Of course, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981, en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

not only will Trustee Kelley be compensated in accordance with 11 U.S.C. § 326, but as chief executive officer, chief financial officer, and primary shareholder of the firm employed in the proceedings, Trustee Kelley will also receive compensation through his firm's profitability. In this way Trustee Kelley ultimately receives two rounds of compensation for his trustee services from the debtor's estate: first through his commission and then second through his ownership of the firm which he employed. Debtor reiterates that a trustee's employment of a firm which he owns is entirely different from a trustee's employment of affiliated professionals. Trustee Kelley exercises discretion in selecting the professionals to employ. So to the extent that Trustee Kelley is the majority beneficiary of the firm which he employs, Debtor alleges that this dyad results in two compensations arising from the performance of his trustee duties and therein exceeds the limits of 11 U.S.C. § 326.

### CONFLICTED INTEREST ≈ VITIATION OF DISINTEREST

A bankruptcy trustee is expected and required to be disinterested in the proceedings. However, as the chief executive officer, chief financial officer, general officer, attorney-in-fact, and majority shareholder of Kelley & Lovett, P.C., Trustee Kelley is very interested in the cases which employ his firm. In a light most sympathetic, Trustee Kelley is collegially interested in seeing that

members of his firm prosper. This, however, raises questions of cronyism, kickbacks, competition avoidance, and unjust enrichment.

A trustee has many duties to be considered as she or he administers a debtor's estate and must weigh the interests of the estate against the interests of creditors. A trustee is also prohibited from placing his own interest above the interests of the estate's beneficiaries ("A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals." U.S. DOJ Exec. Office for U.S. Trs., *Handbook for Chapter 7 Trustees* at 4–1 (2012)). It follows that the trustee should seek a balance between a professional's qualifications and that professional's compensation. But if a trustee disregards cost control, it is hard to see how this serves any interest. Wanton expense not only harms creditors but other non-parties as well when a debtor has non-dischargeable priority debt. A trustee's wanton lack of cost control rises to the detriment of the debtor whose non-dischargeable debt was not reduced as much as it could have been. It also conceivably harms non-parties by reducing the immediate recovery of restitution, taxation, spousal support, or child support.

In a less favorable light, Trustee Kelley's employment of  his own firm creates an economic interest in the conduct of the proceedings. This is to say, rather than administering a case in the best interests of the estate and of the creditors, Trustee Kelley—as chief executive officer, chief financial officer,

attorney-in-fact, and majority shareholder of the firm which he employs in the

bankruptcy proceeding—has an interest in maximizing litigation expenses for the

enrichment of his own firm and his share of the profits therefrom. Thus, where an

unaffiliated trustee might—of personal ethic or creditor concern—impose restraint

upon an overzealous professional, Trustee Kelley has neither reason nor incentive

to contain the fees of his professionals. Worse still, the hourly rates of the attorneys

in Trustee Kelley's firm are inconsistent with the rates of comparable attorneys in

the region. Thus, not only are billable services subject to unnecessary inflation, but

they are also inflated at an exponential rate.

    As case in point, Debtor would refer THE COURT to the matter of *In re Ricky*

*Wayne Bracewell* (BK 02-60546, AP 03-6005, AP 03-6006, MD: 04-CV-00033,

11CA: 05-11951). Bracewell, a farmer, commenced his proceeding under Chapter

12 but later converted to Chapter 7. It just so happened, albeit considerably later,

that the United States Congress passed legislation authorizing disaster payments to

certain farmers. Accordingly, Bracewell received a modest $41,000. Trustee

Kelley and Thomas Lovett commenced a justifiable adversary proceeding for

turnover under 11 U.S.C. §§ 541(a)(1) and 541(a)(6). The bankruptcy court ruled

that the payment was not property of the estate under 541(a)(6) but held that it was

property of the estate under 541(a)(1). Bracewell appealed to the District Court

which ruled cogently and with considerable discussion that the disaster payment

was not property of the estate under either provision. Though the district court's ruling was arguably unpalatable to any taxpayer, Debtor submits that anyone reading the district court's opinion (EXHIBIT D) would have agreed that the ruling was correct. Trustee Kelley, however, appealed to the Eleventh Circuit which upheld the district court's ruling.

Debtor refers to this case because, more clearly than any other anecdote or abstract argument, it shows the breakdown of accountability. After all, what was the point of the circuit appeal? Chivalric crusades in the name of justice are not the domain of a private trustee. The appeal was an indisputable *Hail Mary* and if it had been successful, what would have happened to the $41,000? Debtor submits that it would have been largely consumed by professional fees of Trustee Kelley's firm with little or none left for distribution to creditors. Recalling the earlier excerpt from the Chapter 7 Trustee handbook: "A trustee <u>shall not</u> administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals" (U.S. DOJ Exec. Office for U.S. Trs., *Handbook for Chapter 7 Trustees* at 4–1 (2012); emphasis added). At the moment of undertaking circuit appeal, Trustee Kelley and his employed professional clearly failed to include this instruction in their calculus. But even though the circuit appeal was unsuccessful, it was not without substantial harm to Bracewell and Bracewell's attorney(s).

Debtor further submits that had any other attorney been employed—anyone other than a member of Trustee Kelley's own law firm—such attorney would have advised against appeal and/or even refused the appeal in accordance with the rules of professional conduct. Through a favorable lens, Trustee Kelley failed to restrain the professional under his employ. Through an unfavorable lens, Trustee Kelley blessed the action in hopes of augmenting his firm's revenue and his personal profit share therefrom. Debtor views the *Bracewell* appeal as entirely about the firm's economic gain and not at all about creditor recovery or administration of the estate. This, of course, leads to Debtor's next contention.

## LOSS OF ACCOUNTABILITY AND INAPPROPRIATE DEGREE OF CONTROL

As previously explored, Trustee Kelley's public "professionals" are arguably his private employees. Debtor suggests that this private master-servant relationship leads to a loss of restraint and an inappropriate micromanagement of the conduct of the proceedings. An unaffiliated professional would be both unrestrained and ethically bound to decline engaging in actions which such unaffiliated professional believed to be improper (Georgia Rule of Professional Conduct 1.16).

In sharp contrast, the professionals of Trustee Kelley's firm are beholden unto him as their private employer. Moreover, as his subordinates, these attorney-professionals acting at Trustee Kelley's behest have a further interest in turning a

blind eye to questionable instructions as Trustee Kelley's private supervisory role

shields his employees from disciplinary action (Georgia Rule of Professional

Conduct 5.2). It therefore follows that Trustee Kelley's attorneys are incentivized

to "follow orders" even in instances where unaffiliated attorneys would abstain.

The relationship between Trustee Kelley and his private employees/public

professionals further eliminates a check-and-balance that would otherwise operate.

This is to say, if an unaffiliated professional were engaging in heavy-handed or

abusive tactics, a debtor's attorney could raise the matter with the trustee…except

when that trustee has a countervailing economic interest:

> [T]he rule does not resolve the problems that may arise when a trustee-attorney's personal interest in the amount of compensation he receives […] leads him to take a position adverse to that of the bankrupt and its shareholders whose interests he is charged with protecting in his role as trustee. Where the trustee serves as his own attorney there is no disinterested trustee to ensure that the attorney is paid only for professional services <u>necessary</u> to the administration of the estate. In this situation it is unseemly, to say the least, for a trustee-attorney to urge on appeal, first, that the compensation he was awarded for furnishing legal services to the bankrupt estate should be increased, and second that the bankrupt and its shareholders have no standing to object to the amount of compensation because the Bankruptcy Act makes safeguarding their interests his responsibility. (*In re First Colonial Corp. of America*, 544 F.2d 1291, 1297 (**5th Cir 1977**);[13] cert. denied, 431 U.S. 909; emphasis added)

Though *First Colonial* speaks of a trustee serving as his own attorney, the conflict

which it recognizes holds true as to the practices of Trustee Kelley who directly

---

[13] See prior footnote regarding *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

benefits from the excessive litigation of his professionals. Were it not so, a trustee might be presumed to desire that his professionals represent him in a manner that reflects well upon the trustee who otherwise gains nothing from the poor conduct of such professionals. Equally so, an unaffiliated professional will likely act in a manner that ensures his or her actions reflect positively upon the trustee. But to whom should a debtor's attorney complain when the offending professional is the trustee's own private employee or partner? What recourse does the debtor's attorney have? If the debtor's attorney complains to the court, she or he does so to the detriment of future clients. Ultimately, there is no reason to believe that Trustee Kelley's employees are not acting at Trustee Kelley's behest.

### INTERESTED OPPOSITION TO DEBTOR'S CHAPTER CONVERSION

Several months into the proceedings, Debtor was notified by a Birmingham law firm of his heirship to his grandfather's estate (EXHIBIT E). As is required of him, Debtor notified Trustee Kelley without delay (EXHIBIT E). Debtor even went the extra step of furnishing the 28 U.S.C. § 1746 declaration (EXHIBIT E). Individually and collectively, these facts fly in the face of Trustee Kelley's contention that Debtor acts in bad faith and reflect none of the salient *Marrama* characteristics that Trustee Kelley alleges. (*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 368 (2007); see also *In re Rosson*, 545 F.3d 764, 771 (9th Cir 2008); *Levesque v. Shapiro* (*In re Levesque*), 473 B.R. 331, 336 (9th Cir. BAP 2012))

The cash and securities bequeathed to Debtor are *beyond sufficient* to repay all priority debt and all unsecured creditors. The surplus, in addition to a disputed postage stamp collection (now known to be of greater value than first believed) might even be sufficient to repay all of Debtor's educational loans.[14] But even if it is not, Chapter 11 affords Debtor a forum to attack some $50,000 of negatively-amortized interest that Debtor believes to be invalid under truth-in-lending statutes and regulatory rulemaking. Once and if reduced, Debtor should be able to repay all educational debt as well, but even if not, a quick reorganization is still appropriate as Debtor's Stafford loans are eligible for income-contingent repayment.

Viewed from an alternate trajectory, had Debtor commenced his Chapter 7 proceeding (which of course he would not) with full knowledge and disclosure of the inheritance, Trustee Kelley would have been duty-bound to object on grounds of abuse since Debtor could repay some or all of his debts. How then does Trustee Kelley now oppose conversion given that commencing under Chapter 7 would have been an abuse?

Debtor suggests that Trustee Kelley opposes Debtor's conversion out of Trustee Kelley's self-interest, that Trustee Kelley's opposition to conversion violates his fiduciary duty to Debtor as beneficiary, and that Trustee Kelley's

---

[14] The disputed nature of the bequest is principally one of tortious interference and is not of a character that Trustee Kelley has the knowledge, evidence, standing, or interest to pursue. Thus Trustee Kelley's opposition to conversion is all the more detrimental to creditors and to Debtor.

opposition seeks to administer the estate in a manner solely for Trustee Kelley's personal economic benefit.

## CONCLUDING REMARKS

Length notwithstanding, this memorandum of fact, law, and public policy shows the following: Trustee Kelley employs a fictitious law firm, presumably, to conceal his interest and control in the actual law firm; Trustee Kelley has a pattern of condoning seemingly unnecessary and abusive litigation; Trustee Kelley fails to minimize expenses; Trustee Kelley fails to restrain his professionals; and Trustee Kelley routinely places his economic interests above the interests of creditors and of debtors' estates. In the instant matter, Trustee Kelley vehemently opposes Debtor's conversion to Chapter 11 even though such conversion is arguably proper and beneficial to creditors and Debtor alike.

**THE FOREGOING CONSIDERED**, Debtor prays THE COURT disapprove Trustee's employment of "Kelley, Lovett, Blakey & Sanders, P.C."

**WITH FURTHER CONSIDERATION,** Debtor prays THE COURT declare that Trustee Kelley is conflicted, may be presumed conflicted, or has failed to administer the estate in a manner required and/or expected of a trustee.

**IN FURTHERANCE OF HONEST SERVICES,** Debtor also prays THE COURT propose adoption of a local rule requiring trustees to employ professionals directly by their given names and not in the name of a firm whenever a trustee is affiliated in any way with that firm.

RESPECTFULLY SUBMITTED,
s/ John Michael Woodruff

JOHN M. WOODRUFF, PH.D.
5237 MEADOW GARDEN LANE
BIRMINGHAM, ALABAMA 35242
JOHN@JOHNWOODRUFF.COM
TEL: (404) 477-4652
FAX: (404) 462-4089