**SIGNED this 19 day of January, 2018.**



_____
John T. Laney, III
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| In re: | * | |
| JOHN MICHAEL CHRISTIAN WOODRUFF, | * | **CHAPTER 7** |
| Debtor, | * | **Case Number: 17-70070-JTL** |
| | * | |

---

### MEMORANDUM OPINION

This matter is before the Court on a Motion to Convert (the "Motion") filed *pro se* by the Debtor, John Michael Cristian Woodruff. Walter W. Kelley, the Chapter 7 Trustee, opposed the Motion. After the parties filed briefs and presented arguments at the December 29, 2017 hearing (the "Hearing"), the Court carefully considered the applicable statutes and case law. The Court announced its decision DENYING the Motion from the bench at the conclusion of the Hearing. The Court writes this memorandum opinion to further explain its reasoning for denying the Motion.

1

**Factual Background**

On January 23, 2017, the Debtor filed for Chapter 7 bankruptcy relief. (Pet., ECF No. 1). Walter W. Kelley was appointed Chapter 7 trustee. Initially, the Trustee reported no estate property had value above the exemptions available by law and, accordingly, the Trustee would not make a distribution of estate assets. (Trustee's Report of No Distribution, ECF No. 47). After the Trustee made this report, the Debtor discovered he was a beneficiary under his grandfather's will. The Debtor promptly and voluntarily disclosed this inheritance to the Trustee. Consequently, the Trustee withdrew his Report of No Distribution, (Notice of Withdrawal, ECF No. 52), and filed a report indicating the estate may contain possible assets. (Trustee's Report of Possible Assets, ECF No. 53).

The property to be distributed under the will is not contested. The grandfather's will devised $2,500, furniture, nineteenth-century novels, a stamp collection, and 2,575 shares of Southern Company stock to the Debtor. (Debtor's Amended Schedule A/B, ECF No. 63). The most valuable of these assets—and, in fact, the only asset the Trustee seeks to liquidate—is the Debtor's unexempt Southern Company stock, which the Trustee valued over $120,000 during the Hearing. (Trustee's Ex. 1).

Since discovering the Debtor's inheritance, the parties sought various forms of relief to control the inherited assets. The Trustee initiated an adversary proceeding against the Debtor and the decedent estate's personal representative. In the proceeding, the Trustee sought an order prohibiting the personal representative from making certain interpretations under the will and directing all property bequeathed to the Debtor distributed directly to the Trustee. (Compl., Adversary Proceeding ECF No. 1) Believing the probate exception prohibited the Court from ordering a personal representative to distribute probate assets in a particular matter, the Court

dismissed the adversary proceeding. (Order Granting Motion to Dismiss, Adversary Proceeding ECF No. 30). The Court did, however, issue an order directing the personal representative to distribute all property devised to the Debtor, as determined by the Probate Court, to the Trustee. (Order Granting Trustee's Mot. to Preserve, Adversary Proceeding ECF No. 29). The Debtor too has attempted to control the probate assets through proceedings in this Court. In the underlying bankruptcy case, the Debtor sought a temporary restraining order, restraining the Trustee from "interfering with the administration of the decedent estate, or demanding transfer of property bequeathed, bestowed, or devised to [the] Debtor by the Debtor's grandfather." (Debtor's Mot. for TRO, ECF No. 67). The Court denied this motion. (Order Den. TRO, ECF No. 82).

On October 29, 2017, the Debtor filed the Motion, seeking to convert the Chapter 7 proceeding to one under Chapter 11 of the Code. (Mot. to Convert, ECF No. 106). The Debtor subsequently amended the Motion. (Am. Mot. to Convert, ECF No. 115). In moving to convert, the Debtor is attempting to gain control of estate assets from the Trustee. *See*, 11 U.S.C. § 1107(a) (giving a Chapter 11 debtor-in-possession the powers of a trustee). With this control, the Debtor would present a Chapter 11 plan that would liquidate estate assets and disburse proceeds to creditors. (Trustee's Ex. 4, Debtor's Resp. to Interrog. No. 3). The Debtor's putative Chapter 11 plan is nebulous at best; the Debtor admits he "does not have a crystal ball to foreknow the final particulars of a confirmed plan." (Trustee's Ex. 4, Debtor's Resp. to Interrog. No. 2). In support of the Motion, the Debtor argues that, in the absence of bad faith, he has an absolute right to convert his case from a Chapter 7. The Trustee opposed the Debtor's conversion. (Resp. with Opp'n, ECF No. 120; Am. Resp. with Opp'n, ECF No. 124).[1] Primarily,

---

[1] The Debtor moved to seal these responses. The Trustee did not oppose sealing its response to the Motion and, accordingly, the Court issued an order sealing the documents. (Order Granting Mot. to Seal, ECF No. 128).

3

the Trustee argues the Debtor's actions do constitute bad faith and that a Chapter 11 proceeding is inappropriate given the circumstances of this case.

As the parties litigated these proceedings, the Debtor's communication with the Trustee devolved to being inappropriate, threatening, and evasive. The Trustee argues the Debtor's conduct was an attempt to threaten and dissuade the Trustee from pursuing assets of the estate. For example, after the Trustee requested financial documents pertaining to the Debtor's ability to fund a Chapter 11 plan, the Debtor threatened to file bar complaints, complaints to the U.S. Trustee and Department of Justice, and further litigation if the Trustee proceeded with his request.[2] (Trustee's Ex. 3, pgs. 14-16). Additionally, in a December 12, 2017 email, the Debtor insinuated he would email his complaint to the U.S. Trustee to all attorneys practicing in the Middle District of Georgia Bankruptcy Court if the Trustee did not withdraw his opposition to the Motion.[3] (Respondent's Ex. 3, pg. 23). Moreover, after a hearing in the probate court, the Debtor made a threatening comment that caused the Trustee fear for his safety.[4] (Trustee's December 29, 2017 Test.).

The Trustee also argues the Debtor has evaded and obstructed the Trustee's lawful attempts to gather information. When the Trustee asked the Debtor why he wished to convert

---

[2] The court ultimately denied the Trustee's requests for document production on procedural grounds. (Order Den. Mot. for 2004 Produc., ECF No. 131). The Trustee requested these documents pursuant to FRBP 2004. The Court, however, determined that discovery through FRBP 9014(c) was more appropriate given the nature of the Trustee's requests.

[3] The Debtor's threatening tone is apparent in this excerpt from the email:
> As a civic-minded libertarian with an interest in seeing that government contractees (such as [the Trustee and his counsel]) render honest and disinterested services, it is my patriotic duty to report any evidence of shadiness that I uncover just as it is the US Trustee's duty to suspend from the panel any trustee being investigated. Believe me when I say that I am *intensely* civic-minded.

(Respondent's Ex.3, pg. 22) (emphasis in original).

[4] The Trustee claims (and the Debtor does not argue otherwise) the Debtor called out to the Trustee while walking to his car outside of the courthouse: "Hey, drive safely. We wouldn't want you to die on the way back." The Trustee stated the Debtor's tone was "sarcastic" and "cynical," and caused him to "fear for his life and safety." (Trustee's December 29, 2017 Test.).

4

the case to a Chapter 11, the Debtor made inappropriate and vulgar insults.[5] (Trustee's Ex. 3, pg. 18). Following up on this inquiry through formal discovery requests, the Trustee served interrogatories and requests for admission on the Debtor. (Trustee's Ex. 4, pgs. 1-5). These discovery requests sought reasonable and innocuous information concerning the Motion. The Debtor, however, again responded with inappropriate insults that evaded the Trustee's requests.[6] (Id., pgs. 10-27). The Debtor's inappropriate behavior continued in his own discovery requests from the Trustee.[7] (Trustee's Ex. 5, pgs. 4-5).

At the Hearing, the Debtor did not physically appear, instead attending the hearing by telephone.[8] As the Court made clear to the Debtor on this and previous occasions, the Debtor's telephonic attendance prevented him from submitting any evidence or cross-examining any witness. Accordingly, the Court only admitted the Trustee's evidence. The Court did allow the Debtor to make legal arguments.

## Legal Analysis

Pursuant to 11 U.S.C. § 706(a) a Chapter 7 debtor "may convert a case under [Chapter 7] to a case under chapter 11, 12, or 13 of this title at any time[.]" Notably, this subsection does not explicitly require notice and hearing for a Chapter 7 debtor to convert, indicating the Debtor's

---

[5] In response to an email asking why the Debtor wanted to convert to Chapter 11, the Debtor wrote: "None of your concern. Don't be a nosey prick." (Trustee's Ex. 3, pg. 18).

[6] For example the Debtor responded to multiple requests for admissions and interrogatories with the sentence: "Debtor further suggests that [the Trustee and his counsel]—considering their audacity to pose such [discovery requests]—kindly affix their puckered lips to alternate sides of Debtor's buttocks."

[7] The Debtor, for example, served the following interrogatories:
>   14.  As you are keenly interested in irrelevant matters of Debtor's life, in the name of fair-play and to show just how ridiculous your interrogatories have been, *what are the five worst insults (stated in descending order) ever directed at you? Be specific and quote fully.*
>   15.  As you are keenly interested in irrelevant matters of Debtor's life, in the name of fair-play and to show just how ridiculous your interrogatories have been, *how many extra-marital or extra-relational affairs have you engaged in? Be specific and list names and date ranges for each affair.*

(Trustee's Ex. 5, pgs. 4-5) (emphasis added).

[8] Debtor reported that the weather in Birmingham, where he currently resides, was too dangerous to attempt the trip to the hearing in Columbus, Georgia. The debtor did not request a reset hearing.

authority to convert is broad. *Compare,* 11 U.S.C. § 706(a) (not requiring notice and hearing) *with*, Id. § 706(b) ("On request of a party in interest and *after notice and a hearing…*") (emphasis added). Clearly, however, the Code does not grant a Chapter 7 debtor absolute authority to convert. In particular, § 706(d) provides a debtor may not convert a case "unless the debtor may be a debtor under such chapter." While § 109's limitations would certainly preclude a debtor's ability to convert, the Supreme Court's decision in *Marrama v. Citizens Bank* explains § 706(d)'s limitations also extend where conversion would create immediate grounds for dismissal or re-conversion. 549 U.S. 365 (2007)

*Marrama* addressed a Chapter 7 debtor's authority to convert to a Chapter 13. There, the debtor made misleading representations regarding the value of certain property and failed to disclose pre-petition transfers of the property to a family trust. After the Chapter 7 trustee indicated an interest in recovering that property for the estate, the debtor moved to convert the case to a Chapter 13. *Id.* at 368-69. The trustee and the debtor's creditors opposed the conversion, arguing the debtor's attempts to conceal the property indicated the conversion was in bad faith and was an abuse of the bankruptcy process. *Id.* at 369. The bankruptcy court denied the debtor's motion to convert and the debtor appealed.[9]

The Supreme Court upheld the bankruptcy court's order. It held a bankruptcy court may deny a debtor's conversion where, upon converting the case, the court would have grounds to subsequently dismiss or re-convert the case to a Chapter 7. This is, in part, a practical result required by the Code. 11 U.S.C. § 1307(c) authorizes a bankruptcy court to dismiss a Chapter 13 case or convert it a Chapter 7, "whichever is in the best interests of creditors and the estate, for cause[.]" Though the subsection does not define "cause," it lists circumstances that indicate

---

[9] The 1st Circuit Bankruptcy Appellate Panel and the Court of Appeals upheld the bankruptcy court's denial. *See*, *In re Marrama*, 313 B.R. 525,531 (1st Cir. B.A.P. 2004); *In re Marrama*, 430 F.3d 474 (1st Cir. 2005).

6

cause for dismissal or conversion. *See*, 11 U.S.C. § 1307(c)(1)-(11). Furthermore, the *Marrama* Court, citing numerous circuit court decisions on the issue, noted a debtor's bad-faith conduct may also constitute cause for dismissal or conversion. 549 U.S. at 368, 370-71 (citing, *In re Alt*, 305 F.3d 413, 418-19 (6th Cir. 2002); *In re Kestell*, 99 F.3d 146, 148 (4th Cir. 1996)). If a bankruptcy court finds cause to dismiss or to convert a Chapter 13 case, this finding--in the words of the *Marrama* Court--is "tantamount to a ruling that the individual does not qualify as a debtor under chapter 13." 549 U.S. 373-74. Therefore, § 706(d) "provides adequate authority for the denial of [a debtor's] motion to convert." *Id.* at 374.

Additionally, the *Marrama* court noted bankruptcy courts have explicit authority to prevent an abuse of the bankruptcy process by fashioning relief to deny an "atypical" or bad-faith debtor the opportunity to take prejudicial actions against creditors. *Id.* at 374-75. In particular, the court recognized 11 U.S.C. § 105(a) provides bankruptcy courts power to fashion relief in a manner that appropriately enforces the provisions of the Code. *Id.* at 375 ("The broad authority granted to bankruptcy judges [by § 105(a)] is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.") A bankruptcy court's authority to fashion relief is not limited to circumstances where the debtor misrepresented or failed to disclose assets. Courts may use § 105(a) authority to protect against diminution of the estate or to ensure an equitable distribution of estate assets. *E.g.*, *In re Gaslight* Club, 782 F.2d 767, 771 (7th Cir. 1986) (upholding a bankruptcy court's order replacing a corporate debtor's management where the former president did not propose a chapter 11 plan and oversaw the business during a period of significant losses); *In re Maddox,* 84 B.R. 251, 256-258 (Bankr. N.D. Ga. 1987) (marshalling

a debtor's assets to ensure equitable distribution to particular classes of creditors), *In re Causey*, 2006 Bankr. LEXIS 1137 *16 (Bankr. N.D. Ga. April 5, 2006) (dismissing a chapter 11 proceeding for bad faith pursuant to § 105(a).

Though *Marrama* applies § 706(a) to a chapter 13 conversion, subsequent decisions agree *Marrama's* reasoning applies when a chapter 7 debtor seeks to convert to a chapter 11. *E.g.*, *Levesque v. Shapiro (In re Levesque)*, 473 B.R. 331, 339 (B.A.P. 9th Cir. 2012) ("[T]he language of § 706(a) applies the same whether the chosen chapter for conversion is chapter 11 or chapter 13."); *In re Miller*, 496 B.R. 469, 476 (Bankr. E.D. Tenn. 2013) (applying *Marrama* where the debtor sought to convert to Chapter 11); *In re Sammut*, 486 B.R. 404, 408 (Bankr. E.D. Mich. 2012) (same). Even before the *Marrama* decision, courts in this circuit denied motions to convert to a Chapter 11 where the conversion clearly created cause to dismiss the case. *E.g.*, *In re Eugene Alexander, Inc.*, 191 B.R. 920, 924 (Bankr. M.D. Fla. 1994) (holding a court may deny conversion to Chapter 11 where cause exists to subsequently dismiss or re-convert the case and would make conversion a "futile and a wasted act").

Clearly, the law directs this Court to deny a motion to convert to Chapter 11 when the facts and circumstances of the case would create grounds for subsequent dismissal or re-conversion. This Court, therefore, must examine the legal standards for determining grounds for dismissal or conversion of a Chapter 11 case. After determining the appropriate standard, the court must decide whether the facts and circumstances of this case would require dismissal or conversion.

11 U.S.C. § 1112 guides the Court in this decision, though ultimately any finding must be specific to the facts of the case. *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 371-72 (5th Cir. 1987) (directing a court to consider the totality of the circumstances surrounding

8

the case); *see also*, *In re Global Emergency Res., LLC*, 563 B.R. 76, 80 (Bankr. S.D. Ga. 2016) (same).  Like § 1307, §1112(b)(1) allows a bankruptcy court to dismiss a Chapter 11 case or convert the case to a Chapter 7 for "cause." Cause is not defined; however, § 1112(b)(4) enumerates sixteen circumstances indicative of "cause." Those pertinent to the matter before the court include:

> (A) substantial or continuing loss to or diminution of the estate and the absence of reasonable likelihood of rehabilitation;…
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;…
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;…

11 U.S.C. § 1112(b)(4).

Case law interpreting the first of these circumstances, § 1112(b)(4)(A), is particularly applicable to the matter before this Court. "The purpose of [§ 1112(b)(4)(A)] is to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *Loop Corp. v. U.S. Tr.,* 379 F.3d 511, 516 (8th Cir. 2004) (citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 2004) (internal quotations omitted).[10]  For cause to arise under this subsection, the moving party has the burden of showing two elements: (1) the debtor's assets are diminishing and (2) there is no reasonable likelihood of rehabilitation. *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).

The first of these elements protects the value of the estate. In finding cause, the bankruptcy court must determine whether the estate "has suffered or continue[s] to experience a negative cash flow, or, alternatively, declining asset values." *In re Landmark Atl. Hess Farm,*

---

[10] The *Loop Corp.* case precedes 2005 amendments to § 1112. P.L. No. 109-8, Title IV, Subtitle B, § 442(a) (April 20, 2005). These amendments only added the qualifier, "substantial or," to the beginning of the subsection. Therefore, case law interpreting the former § 1112(b) is applicable to the amended § 1112(b)(4)(A). *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007).

*LLC,* 448 B.R. 707, 713-14 (Bankr. D. Md. 2011). Because Chapter 11 liquidation plans are particularly dependent on the value of estate assets, courts must be intensely mindful of diminishing asset values in these cases. When a debtor proposes a Chapter 11 liquidation plan and has insufficient income to pay on-going expenses, courts have dismissed or converted those cases to prevent administrative fees and other expenses from diminishing the value of the estate. *Loop Corp.*, 379 F.3d at 516 (converting a Chapter 11 case that proposed a liquidation plan); *In re Rundlett*, 136 B.R. 376, 379-80 (Bankr. S.D.N.Y. 1992) (dismissing a Chapter 11 case that proposed a liquidation plan).

The second element requires a court to determine whether there is a reasonable likelihood of rehabilitating the debtor. Congress consciously used the word "rehabilitation" and not "reorganization." The intent behind this word-choice was to focus the court on the question of whether a debtor can propose a financially viable plan for continuing operations, not on whether the debtor can propose a confirmable plan. *In re Basil St. Partners, LLC,* 477 B.R. 856, 862 (Bankr. M.D. Fla. 2012) (citing *In re Khan*, 2012 Bankr. LEXIS 2574 at *6 (9th Cir. B.A.P. June 6, 2012)). Accordingly, a Chapter 11 case with negative cash flows, mounting costs to the estate, and no indication of operating as a going concern has no likelihood of rehabilitation. *In re BH S&B Holdings, LLC,* 439 B.R. 342, 347-48 (Bankr. S.D.N.Y. 2010). Because this analysis requires a court to determine whether the plan is likely to produce viable on-going operations to the benefit of interested parties, many courts have held a liquidating Chapter 11 plan generally does not rehabilitate the debtor; rather, these plans dispose of the debtor's assets, end operations, and dissolve outstanding liabilities. *E.g.*, *Loop Corp.* 379 F.3d at 516; *In re The Ledges Apartments*, 58 B.R. 84, 87 (Bankr. D. Vt. 1986) ("Rehabilitation is not reorganization.

Reorganization encompasses rehabilitation and may contemplate liquidation. Rehabilitation, on the other hand, may not include liquidation.")

The few courts asked to examine the interplay between §1112 and §706, clearly considered the debtor's ability to fund a reorganization plan and the debtor's intentions in proposing the plan. In *In re Miller* the bankruptcy court allowed a Chapter 7 debtor to convert to a Chapter 11 case. 496 B.R. 469, 481-82 (Bankr. E.D. Tenn. 2013). There, the proposed Chapter 11 plan both committed the debtor's future earnings and liquidated assets to restructure the debtor's obligations to his creditors. *Id.* at 481. The debtor's income, the court noted, was substantial enough to reorganize his finances and increase returns for creditors. *Id.* In contrast, other courts have denied conversion where circumstances indicated a Chapter 11 proceeding would prejudice creditors. One court denied conversion where the proposed Chapter 11 plan solely distributed liquidation proceeds, finding the plan would cause unnecessary delays and "was not compatible with the purpose of a Chapter 11 proceeding." *In re Watkins*, 132 B.R. 781, 782 (Bankr. S. D. Fla. 1991) (denying a Chapter 7 trustee's motion to convert, as the proposed plan merely distributed a lump-sum alimony award). Another court denied a debtor's motion to convert when it found the debtor proposed the conversion "to wrangle control [of the estate] from the trustee" and conversion would "cause delay and further diminution of the estate." *In re Gedda*, 2015 Bankr. LEXIS 920 *9 (Bankr. M.D. Fla. March 24, 2015).

The circumstances indicating cause listed in § 1112(b)(4), however, are not exhaustive and a court may consider other factors in determining whether to convert or dismiss a Chapter 11 case. *In re Gordon*, 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012). A debtor's bad-faith conduct is widely recognized as cause for dismissing a Chapter 11 proceeding. While courts have not articulated an exact test for determining what conduct constitutes bad-faith, most courts

11

acknowledge that filing a Chapter 11 without a "realistic possibility of an effective reorganization" in an attempt to "delay or frustrate the legitimate efforts [of creditors]" constitutes bad faith.[11] *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *see also*, *Phoenix Piccadilly Ltd. v.. Life Ins. Co. of Va.,* 849 F. 2d 1393, 1394-95 (11th Cir. 1988); *In re Quartz Hill Mining, LLC*, 2014 Bankr. LEXIS 5289, *8-9 (Bankr. S.D. Fla. 2014). Likewise, when a debtor obscures the estate's interests in assets and refuses to answer questions regarding those assets, his conduct constitutes bad faith and is cause for dismissal. *In re Boughton*, 243 B.R. 830, 836 (Bankr. M.D. Fla. 2000) (finding the debtor's creation of "sham trusts" to conceal assets and the debtor's refusal to comply with discovery requests regarding the trusts was bad faith and constituted grounds for dismissing the case).

## Discussion

Considering the totality of the facts and circumstances before the Court in this case, the evidence overwhelmingly supports denying conversion. To begin with, the Debtor has not filed tax returns, which would constitute cause for dismissal under § 1112(b)(4)(I).[12] Further, the Debtor cannot insure the estate against diminution, again constituting cause for dismissal under § 1112(b)(4)(C). Of course, the nature of publicly held stock virtually eliminates the risk loss by casualty or theft. The risk that the estate is diminished through negligent or improper distribution, however, remains. Although the Debtor is educated and has coherently presented legal arguments in this case, the Debtor is not a bankruptcy professional. To the Court's

---

[11] The Court's recognition that a debtor's bad-faith conduct is grounds for denying his motion to convert is distinguishable from its prior opinion in *Kimrow, Inc. V. Cohilas (In re Kimrow, Inc.)*. 534 B.R. 219, 224 (Bankr. M.D. Ga. 2015). There, this Court addressed a motion to convert from Chapter 11 to Chapter 7 pursuant to § 1112(a). This Court determined *Marrama* did not apply in that circumstance because conversion to a Chapter 13 requires greater good-faith obligations—mainly, to ensure on-going relationships during the term of the plan—and because misconduct by debtor's principals is rarely grounds for dismissal in a Chapter 7 case. *Id.* at 225.

[12] Debtor admitted he has not filed a 2016 tax return in his repose to the Trustee's Request for Document Production. (Trustee's Exhibit 4, pg. 25).

knowledge, he has no experience liquidating assets or navigating the complexities of a Chapter 11 proceeding. The Debtor's inexperience increases the risk of diminution, a risk creditors would bear without the mitigation of insurance. In contrast, all of a trustee's liquidation and disbursement proceedings are bonded. This additional layer of insurance protects creditors from the risk of loss while the estate is in the Trustee's control. The Debtor has not demonstrated he could offer similar protections in a Chapter 11 proceeding.

Implying cause through § 1112(b)(4)(A) is perhaps more convincing. Here, the evidence clearly shows allowing the Debtor to propose a liquidating Chapter 11 plan would subject the estate to continuing diminution without a reasonable likelihood of rehabilitating the Debtor's finances. Prior to filing this case, the Debtor was employed as a university professor. Currently, the Debtor's income consist of inconsistent wages from working odd jobs not related to his profession, receiving minimal unemployment compensation, and contributions from family members. Though the Debtor's expenses are minimal (the Debtor lives with family and does not pay rent), his schedules reflect even those small expenses exceed his income.[13] Moreover, the Trustee introduced evidence indicating the Debtor's expenses may further exceed those disclosed in his schedules.[14] Altogether, the evidence clearly shows the Debtor is insolvent and continues to incur on-going liabilities.

The Debtor does have exempt assets he could use to offset these liabilities, including exempt interests in stock and other personal property. Additionally, the Debtor stated at the Hearing he could reduce his expenses to avoid diminishing the estate.[15] Of course, because the

---

[13] The Debtor's Schedules I and J (ECF Nos. 29 and 30, respectively) disclose the Debtor's monthly income is $1,123.44 and his expenses are $1,235.16. Accordingly, the Debtor's monthly expenses exceed his income by $111.72.
[14] *See*, Trustee's Ex. 6. At the Hearing, the Debtor moved to seal these exhibits given the personal nature of the expense. The Trustee did not oppose the Motion to Seal and, therefore, the court granted the Debtor's motion.
[15] The Debtor also suggested he may be able to sell assets abandoned by the trustee, including a stamp collection. While the Debtor has a motion to compel the Trustee's abandonment pending (Mot. to Compel Abandonment, ECF

Debtor appeared by telephone, this statement was unsworn and not subject to cross-examination and, thus, the Court cannot consider the statement when making its decision. Even if the Court considered the Debtor's testimony, reducing his already minimal expenses is unlikely to offset the large administrative costs of a Chapter 11 filing. Likewise, the Debtor's exempt property is unlikely to fully cover these expenses. Chapter 11 debtors are required to pay substantial administrative fees to the U.S. Trustee. Further, Chapter 11 debtors must adequately insure property and use U.S. Trustee approved bank accounts. These expenses will quickly consume the Debtor's relatively small amount of exempt assets and impose costs on the estate. If the Court were to allow conversion, the Debtor would presumably use the inherited stock to pay these liabilities and expenses. As the stock is the estate's only real asset, allowing the debtor to continue incurring liabilities in a Chapter 11 proceeding would reduce the value of the estate and, correspondingly, reduce creditors' disbursements.

Secondly, there is no reasonable likelihood of rehabilitating of the Debtor's finances. The Debtor is not attempting to restructure his obligations to secured or priority creditors by committing some proportion of his income to these claims. In fact, the Debtor does not have a reliable source of income. Rather, to fund the plan, the Debtor proposes disposing of his assets in final satisfaction of dischargeable claims. This is clearly a liquidation plan and not a plan to rehabilitate the debtor's assets and reorganize his liabilities. Accordingly, case law directs this court to find there is no "reasonable likelihood of rehabilitation."

The evidence is clear that liquidation--as opposed to reorganization--is the most suitable result for this case. In that way, the case is clearly analogous to the *Watkins* and *Gedda* cases

---

No. 154), the Court, at the time of issuing this decision, has not ruled on that motion. Further, because the Debtor's statement regarding the value of this asset was not subject to cross examination, the court will not consider this statement.

14

citied previously. Here, the estate's primary asset is publicly traded stock. The stock is easily transferable with minimal transaction costs. Utilizing a complex Chapter 11 proceeding to liquidate this asset and distribute proceeds to creditors would impose delays and costs on creditors. Additionally, like in *Gedda*, the Debtor's motivation in requesting to convert the case appears to be taking control of the estate from the Trustee. The putative Chapter 11 plan would accomplish nothing more than a liquidation of the estate's assets but would impose additional costs and delay on creditors. These costs are unnecessary when the current Chapter 7 proceeding offers a lower-cost method of liquidation.

Three circumstances listed in § 1112(b)(4) are present in this case. If this Court only considered these circumstances, determining whether to allow the Debtor to convert the case might be more difficult. The Trustee, however, presented further evidence indicating cause for denying the Motion. Controlling case law directs the Court to consider the "totality of the circumstances" when determining whether cause exists. Accordingly, the Court additionally considers the Trustee's argument that the Debtor's conduct constituted bad-faith, and, for that reason, the Court should deny the debtor's motion.

The Debtor's conduct was certainly unacceptable. It was vulgar, needless, and disrespectful. The Debtor did not misrepresent his assets to the Trustee or to this Court. In that way, the Debtor's conduct is distinguishable from the misrepresentations and inaccurate schedules in *Marrama*. Though the Debtor's conduct is distinguishable, ultimately, his intent is equally reprehensible. The record reflects the Debtor threatened the Trustee with administrative complaints, civil actions, and violence in an attempt to discourage the Trustee's opposition to the Motion and to obtain control of the estate's assets. In addition to threatening the Trustee, the Debtor also evaded the Trustee's lawful attempts to gather information regarding his intent in

15

filing the Motion. The evidence before this Court indicates the Debtor's conduct was a blatant attempt to discourage the Trustee from representing the interests of the estate.

## Conclusion

This Court recognizes that § 706(a) grants a Chapter 7 debtor broad authority to convert his case. A court should deny a debtor's motion to convert only in those unusual circumstances where conversion would be futile or an abuse of the bankruptcy process. Individually, any of the circumstances in this case might not warrant denying the Motion. Together, however, the weight of the evidence is overwhelming. The debtor failed to file tax returns; cannot adequately insure the estate from loss; lacks income to offset Chapter 11 expenses; proposes converting to a Chapter 11 to liquidate a single liquid asset, and; has inappropriately attempted to dissuade the Trustee from representing the interests of the estate. Should the Court allow the Debtor to convert, cause for dismissing or reconverting the case would immediately arise. Further, allowing the Debtor to control the estate through a Chapter 11 proceeding exposes it to diminution and risk. This Court has adequate authority to fashion relief to avoid futile and potentially abusive conversions; denying the Motion is consistent with that authority.

The Court will issue an order in accordance with this Memorandum Opinion.

**END OF DOCUMENT**